Filed 4/30/14  Lozzi v. Pro Tour Memorabilia CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JULIO MORALES LOZZI, | B247382 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. PC051069) |
| v. | |
| PRO TOUR MEMORABILIA, LLC, | |
| Defendant and Respondent. | |

        APPEAL from a judgment of the Superior Court of Los Angeles County.  Stephen P. Pfahler, Judge.  Affirmed.

        McNicholas & McNicholas, Matthew S. McNicholas, Juan C. Victoria; Law Offices of Nicholas A. Siciliano, Nicholas A. Siciliano; Esner, Chang & Boyer, Stuart B. Esner and Holly N. Boyer for Plaintiff and Appellant.

        LeClairRyan, Christiane E. Cargill-Kinney and Brian S. Inamine for Defendant and Respondent.

_____

Plaintiff Julio Morales Lozzi appeals from the summary judgment entered in favor of defendant Pro Tour Memorabilia, LLC (Pro Tour) on Lozzi's complaint for negligence. We affirm.

BACKGROUND

Pro Tour manufactures and distributes wall décor for various retailers and hotels. At the time of Lozzi's injury, Pro Tour was operating its business at a leased premises on San Fernando Road in Los Angeles. At that time, Lozzi was working as an independent contractor for a trucking company.

On June 4, 2010, Lozzi drove his tractor-trailer to Pro Tour to pick up a load. He parked across the street from Pro Tour, facing southbound in an area where the curb was painted red. Lozzi exited his truck, walked across the street, and entered Pro Tour, where he was told that his load was not ready and he would have to wait. After asking permission, he ate his lunch in the Pro Tour lunch room and then returned to his truck to wait.

Lozzi states that he waited for 15 to 20 minutes before getting out and again crossing the street to Pro Tour. According to Lozzi, the Pro Tour employee in charge of the shipping department said that he was quickly going to load two or three more pallets into another truck and would then be ready to load Lozzi's truck. Lozzi again returned to his truck to wait.

After waiting for another 15 to 20 minutes, Lozzi got out again to see if Pro Tour was ready to load his truck. After exiting his truck, he was struck by a vehicle heading southbound on San Fernando Road, driven by defendant Myrna Berger. Berger was not affiliated with Pro Tour in any way, and San Fernando Road is a public street owned and operated by the City of Los Angeles (City).

Lozzi filed suit against Berger, the alleged owner of the car she was driving, the City, and 100 Doe defendants, alleging four causes of action. He later amended his

2

complaint to substitute Pro Tour for a Doe defendant on a single cause of action for negligence.[1]

Pro Tour moved for summary judgment on the ground that it "owed no legal duty to protect [Lozzi] from third party harm occurring across the street from its premises." Lozzi opposed on the ground that a landowner's "duty of reasonable care includes a duty to maintain one's own property in such a way as to avoid exposing persons to an unreasonable risk of injury on adjacent land."

The superior court granted summary judgment, concluding that Pro Tour "did not owe [Lozzi] a duty." The court entered judgment in favor of Pro Tour, and Lozzi timely appealed.

## STANDARD OF REVIEW

We review the trial court's ruling on a motion for summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.)

## DISCUSSION

Lozzi argues that the superior court erred by concluding that Pro Tour did not owe him a duty of care. We are not persuaded.

"The general rule in California is that '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person . . . .' (Civ. Code, § 1714, subd. (a).) In other words, 'each person has a duty to use ordinary care and "is liable for injuries caused by his failure to exercise reasonable care in the circumstances . . . ."' [Citation.]" (*Cabral v. Ralphs Grocery Co.* (2011) 51 Cal.4th 764, 771 (*Cabral*).) In *Rowland v. Christian* (1968) 69 Cal.2d 108 (*Rowland*), the Supreme Court "identified several considerations that, when balanced together, may justify a departure from the fundamental principle embodied in Civil Code section 1714: 'the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the

---

[1] No defendant other than Pro Tour is a party to the present appeal, which is from a judgment in favor of Pro Tour only.

3

defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved.' [Citations.]" (*Cabral*, *supra*, 51 Cal.4th at p. 771.)

The Court also provided the following guidance for determining whether an exception to the general duty of ordinary care should be recognized in a particular case under *Rowland*: "[T]he *Rowland* factors are evaluated at a relatively broad level of factual generality. Thus, as to foreseeability, we have explained that the court's task in determining duty 'is not to decide whether a particular plaintiff's injury was reasonably foreseeable in light of a particular defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . .' [Citations.]" (*Cabral*, *supra*, 51 Cal.4th at p. 772, italics omitted.) Likewise, regarding the other *Rowland* factors, the relevant question is "not whether they support an exception to the general duty of reasonable care on the facts of the particular case . . . , but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy." (*Ibid.*) "By making exceptions to Civil Code section 1714's general duty of ordinary care only when foreseeability and policy considerations justify a categorical no-duty rule, we preserve the crucial distinction between a determination that the defendant owed the plaintiff no duty of ordinary care, which is for the court to make, and a determination that the defendant did not breach the duty of ordinary care, which in a jury trial is for the jury to make." (*Ibid.*, italics omitted.)

*Cabral* illustrates the application of these principles. In that case, a truck driver had parked his tractor-trailer on the shoulder of the freeway so that he could eat a snack. (*Cabral*, *supra*, 51 Cal.4th at p. 769.) A pickup truck rear-ended the parked tractor-trailer, killing the pickup truck's driver. (*Ibid.*) A toxicology report on the decedent driver was negative, and expert witnesses opined that he had probably fallen asleep while driving or suffered from an unknown medical condition. (*Id.* at pp. 769-770.) After the

4

widow of the decedent driver obtained a jury verdict against the employer of the tractor-trailer's driver, the employer appealed and obtained a reversal in the Court of Appeal on the ground that the tractor-trailer driver owed the decedent driver no duty of care. (*Id.* at p. 770.)

The Supreme Court reversed the Court of Appeal. (*Cabral*, *supra*, 51 Cal.4th at p. 787.) Addressing the duty question, the Court observed that "the factual details of the accident are not of central importance. That [the tractor-trailer driver] parked 16 feet from the outermost traffic lane, rather than six feet or 26 feet; that parking for emergencies was permitted in the dirt area he chose; that [the decedent driver] likely left the highway because he fell asleep or because of some unknown adverse health event, rather than from distraction or even intoxication—none of these are critical to whether [the tractor-trailer driver] owed [the decedent driver] a duty of ordinary care. These facts may have been important to the jury's determinations of negligence, causation and comparative fault, but on duty California law looks to the entire 'category of negligent conduct,' not to particular parties in a narrowly defined set of circumstances. [Citations.] To base a duty ruling on the detailed facts of a case risks usurping the jury's proper function of deciding what reasonable prudence dictates under those particular circumstances." (*Id.* at p. 774.)

Accordingly, the Court framed the pertinent inquiry as follows: "We take the issue between the parties to be whether a freeway driver owes other drivers a duty of ordinary care in choosing whether, where and how to stop on the side of the road. Because the general duty to take ordinary care in the conduct of one's activities (Civ. Code, § 1714, subd. (a)) indisputably applies to the operation of a motor vehicle, the issue is also properly stated as whether a categorical exception to that general rule should be made exempting drivers from potential liability to other freeway users for stopping alongside a freeway." (*Cabral*, *supra*, 51 Cal.4th at p. 774.)

The Supreme Court decided *Cabral* before Lozzi filed his complaint in this action, but Lozzi regrettably fails to articulate his arguments within *Cabral*'s analytical framework. He contends that "[a] landowner owes a duty to exercise reasonable care to

5

maintain his or her property in such a manner as to avoid exposing others to an unreasonable risk of injury," and the landowner's duty "is *not limited* to injuries that occur on premises owned or controlled by the landowner" but rather "encompasses a duty to avoid exposing persons to risks of injury that occur off site if the landowner's property is maintained in such a manner as to expose persons to an unreasonable risk of injury offsite." (*Barnes v. Black* (1999) 71 Cal.App.4th 1473, 1478 (*Barnes*), italics added.) That is all true, but it does not follow that under *Cabral* there is no relevant categorical exception to the landowner's duty.

We conclude that there is. Following *Cabral*, and therefore undertaking the duty inquiry at a broad level of factual generality, we take the issue between Lozzi and Pro Tour to be whether a business owner owes its invitees a duty of ordinary care in choosing whether to require invitees to remain on the business premises when waiting to be served, rather than allowing them to leave, if they wish, and thereby be exposed to whatever dangers might be present off site. It is undisputed that Lozzi ate his lunch in Pro Tour's lunch room, and there is no evidence that he was in any way prevented from remaining on Pro Tour's premises until Pro Tour was ready to load his truck. Thus, described in terms of the particular facts here, the issue is whether Pro Tour had a duty to require Lozzi to wait at Pro Tour rather than in his truck across the street. We conclude that there is no such duty.

Again following *Cabral*, we first address foreseeability and the closeness of the connection between the defendant's conduct and the plaintiff's injury. (*Cabral*, *supra*, 51 Cal.4th at pp. 774-781.) When a business fails to require an invitee to remain on site while waiting to be served, and the invitee leaves and is injured off site, the injury is not foreseeable, except in the sense that it is possible for anyone to be injured any time while doing anything, which is insufficient. If a business allows an invitee to leave the premises while waiting to be served, then the business can expect the invitee to exercise reasonable care in protecting his or her own safety, and the business ordinarily has no reason to foresee injury to the invitee. Similarly, a close connection between the defendant's conduct and the plaintiff's injury is lacking. The business does nothing more

6

than allow the invitee to wait where he or she wishes.  There may be a close connection between the plaintiff's injury and the plaintiff's choice about where to wait, but that does not establish a close connection between the injury and the defendant's decision to allow the plaintiff to make that choice.

We next consider "whether the public policy factors identified in *Rowland*—'the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved' (*Rowland*, *supra*, 69 Cal.2d at p. 113)— justify creating a duty exception" immunizing business owners from potential liability for injuries suffered by invitees who leave the premises while waiting to be served.  (*Cabral*, *supra*, 51 Cal.4th at p. 781.)  We conclude that they do.

Ordinarily no moral blame attaches to a business's decision to allow invitees to leave the premises while waiting to be served.  The policy of preventing future harm likewise does not require businesses to compel invitees to wait on site, because, again, when a business allows an invitee to leave, any invitee who leaves can be expected to exercise at least reasonable care in attempting to avoid injury.  The burdens of imposing a duty of care and the availability of insurance are linked, because imposing a duty here would require businesses to insure against every conceivable risk that their invitees might encounter while waiting off site.  That is a substantial burden, and it weighs heavily in favor of recognizing a duty exception here.

Finally, Lozzi argues that *Barnes* (a Court of Appeal decision that predates *Cabral*) supports his position.  We are not persuaded.  *Barnes* involved an apartment complex in which a sidewalk leading to a children's play area was located adjacent to a steep driveway that led down to a busy, four-lane public street.  (*Barnes*, *supra*, 71 Cal.App.4th at p. 1476.)  Residents had complained to the manager "of the danger presented when children rode bicycles and other wheeled vehicles along the sidewalk to the play area, passing by the steep driveway.  Some children were seen careening down the driveway on wheeled vehicles, either out of control or intentionally, who would stop

7

before entering the street by driving onto the grass." (*Ibid.*) In the incident giving rise to the lawsuit, a minor child riding a tricycle lost control when the tricycle "suddenly veered off the sidewalk, down the slope of the driveway," and into the street, where he was struck by a car, fatally injuring him. (*Ibid.*) The apartment owner prevailed on summary judgment, but the Court of Appeal reversed, concluding that the owner had not carried "its burden to negate a duty of care." (*Id.* at p. 1479.) The court distinguished numerous seemingly contrary cases on the ground that, in the case before it, the injury was caused by the "child being ejected from [the defendant's] premises by its dangerous configuration at a point where resident young children were known to ride wheeled toys." (*Id.* at p. 1480.) In a similar vein, the court observed that in another case cited by the apartment owner, "[t]he plaintiff did not allege the configuration of the defendant's property ejected the child into the street against his will or otherwise affirmatively cause the child to enter the street, as here." (*Id.* at p. 1479.)

*Barnes* is distinguishable because Lozzi was not ejected into the street by a dangerous configuration of Pro Tour's property. Rather, Pro Tour merely failed to require Lozzi to wait on site until his truck could be loaded, and Lozzi chose to wait across the street in his truck. *Barnes* does not address such a scenario.

For all of the foregoing reasons, we conclude that Pro Tour's motion for summary judgment was properly granted.

8

DISPOSITION

The judgment is affirmed.  Respondent shall recover its costs of appeal.

NOT TO BE PUBLISHED.


                                        ROTHSCHILD, Acting P. J.

We concur:


JOHNSON, J.


MILLER, J.[*]

---

[*]     Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.